**UNITED STATES of America,**

**Plaintiff-Appellee,**

v.

**John WEBB, Defendant-Appellant.**

**No. 72–1134.**

United States Court of Appeals,
Fifth Circuit.

July 11, 1972.

Oakley Melton, Jr., Montgomery, Ala. (Court-appointed), for defendant-appellant.

Ira DeMent, U. S. Atty., D. Broward Segrest, Asst. U. S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before WISDOM and INGRAHAM, Circuit Judges, and BOOTLE, District Judge.

INGRAHAM, Circuit Judge:

Appellant was tried and convicted by a jury of five violations of 18 U.S.C. §§

892 and 894 [1] [extortionate credit matters]. A general sentence of eight years was imposed to run on all five counts.

Appellant Webb appeals attacking the statute under which he stands convicted and the trial which convicted him.

1. § 892. Making extortionate extensions of credit

(a) Whoever makes any extortionate extension of credit, or conspires to do so, shall be fined not more than $10,000 or imprisoned not more than 20 years, or both.

(b) In any prosecution under this section, if it is shown that all of the following factors were present in connection with the extension of credit in question, there is prima facie evidence that the extension of credit was extortionate, but this subsection is nonexclusive and in no way limits the effect or applicability of subsection (a):

(1) The repayment of the extension of credit, or the performance of any promise given in consideration thereof, would be unenforceable, through civil judicial processes against the debtor

(A) in the jurisdiction within which the debtor, if a natural person, resided or

(B) in every jurisdiction within which the debtor, if other than a natural person, was incorporated or qualified to do business

at the time the extension of credit was made.

(2) The extension of credit was made at a rate of interest in excess of an annual rate of 45 per centum calculated according to the actuarial method of allocating payments made on a debt between principal and interest, pursuant to which a payment is applied first to the accumulated interest and the balance is applied to the unpaid principal.

(3) At the time the extension of credit was made, the debtor reasonably believed that either

(A) one or more extensions of credit by the creditor had been collected or attempted to be collected by extortionate means, or the nonrepayment thereof had been punished by extortionate means; or

(B) the creditor had a reputation for the use of extortionate means to collect extensions of credit or to punish the nonrepayment thereof.

(4) Upon the making of the extension of credit, the total of the extensions of credit by the creditor to the debtor then outstanding, including any unpaid interest or similar charges, exceeded $100.

(c) In any prosecution under this section, if evidence has been introduced tending to show the existence of any of the circumstances described in subsection (b) (1) or (b) (2), and direct evidence of the actual belief of the debtor as to the creditor's collection practices is not available, then for the purpose of showing the understanding of the debtor and the creditor at the time the extension of credit was made, the court may in its discretion allow evidence to be introduced tending to show the reputation as to collection practices of the creditor in any community of which the debtor was a member at the time of the extension.

§ 894. Collection of extensions of credit by extortionate means

(a) Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means

(1) to collect or attempt to collect any extension of credit, or

(2) to punish any person for the nonrepayment thereof,

shall be fined not more than $10,000 or imprisoned not more than 20 years, or both.

(b) In any prosecution under this section, for the purpose of showing an implicit threat as a means of collection, evidence may be introduced tending to show that one or more extensions of credit by the creditor were to the knowledge of the person against whom the implicit threat was alleged to have been made, collected or attempted to be collected by extortionate means or that the nonrepayment thereof was punished by extortionate means.

(c) In any prosecution under this section, if evidence has been introduced tending to show the existence, at the time the extension of credit in question was made, of the circumstances described in section 892(b) (1) or the circumstances described in section 892(b) (2), and direct evidence of the actual belief of the debtor as to the creditor's collection practices is not available, then for the purpose of showing that words or other means of communication, shown to have been employed as a means of collection, in fact carried an express or implicit threat, the court may in its discretion allow evidence to be introduced tending to show the reputation of the defendant in any community of which the person against whom the alleged threat was made was a member at the time of the collection or attempt at collection.

■ Appellant's attack upon the statute is insubstantial. Relying on reasoning, paralleling the Supreme Court's decision in United States v. Bass, 404 U. S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), he asserts that Congress could not permissibly make criminal the purely local exercise of extortionate credit practices. More particularly, appellant argues that §§ 892 and 894 should not apply to one whose actions were purely intrastate, because the congressional thrust of those sections was directed at organized crime. These arguments have been expressly rejected in a series of cases. Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942); United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941); United States v. Lebman, 464 F.2d 68 (5th Cir., 1972); United States v. Harris, 460 F.2d 1041 (5th Cir., 1972). In the latter case a similar challenge was directed at 18 U.S.C. § 1955. The court there relying on *Perez, supra,* observed:

"The power of Congress to legislate under the Commerce Clause of the Constitution 'is not confined to the regulation of commerce *among the states.*' United States v. Darby, 312 U.S. 100, 118, 61 S.Ct. 451, 459 [, 85 L.Ed. 609] (1941). It also extends to intrastate activities which affect interstate commerce to such an extent 'as to make regulation of them appropriate means to the attainment of a legitimate end . . . .' Id. As Mr. Justice Jackson stated in Wickard v. Filburn, 317 U.S. 111, 125, 63 S.Ct. 82, 89, [87 L.Ed. 122] (1942).

'. . . even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce and this irrespective of whether such effect is what might at some earlier time have been defined as "direct" or "indirect." '

"In legislating for a legitimate end under the Commerce Clause, Congress is not restricted to merely an economic definition of commerce but it may also legislate against matters considered to be 'deemed a moral and social wrong.' Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 257, 85 S.Ct. 348, 358 [, 13 L.Ed.2d 258] (1964). Indeed, Congress has the power 'to declare that an entire class of activities affects commerce.' Maryland v. Wirtz, 392 U.S. 183, 192, 88 S.Ct. 2017, 2022 [, 20 L.Ed.2d 1020] (1968); United States v. Darby, supra [312 U.S.] at 120–121, 61 S.Ct. at 460. And, as stated by Mr. Justice Harlan in Maryland v. Wirtz, 392 U. S. 183, 193, 88 S.Ct. 2017, 2022 [20 L.Ed. 1020] (1968).

'The contention that in Commerce Clause cases the courts have power to excise, as trivial, individual instances falling within a rationally defined class of activities has been put entirely to rest.'

"In Perez v. United States, supra, the Supreme Court found that extortionate credit transactions ('loan sharking') fell into a rationally defined class of activities which Congress could regulate under the Commerce Clause. The Court stated, 'Extortionate credit transactions, *though purely intrastate,* may in the judgment of Congress affect interstate commerce.' 402 U.S. at 154, 91 S.Ct. at 1361 (emphasis supplied). Thus, such transactions were found to be subject to federal regulation. The same is true of illegal gambling. As defined in 18 U.S.C. § 1955 illegal gambling constitutes a rationally defined class of activities within congressional power to regulate under the Commerce Clause. See United States v. Darby, 312 U.S. at 120–121, 61 S.Ct. at 460, where the Court held the class of activities in that case to be properly regulated by Congress without proof that the particular intrastate activity against which a sanction was laid had an ef-

fect upon commerce. In *Perez*, the petitioner was found by the Court to be 'clearly *a member of the class* which engages in "extortionate credit transactions" as defined by Congress and the description of that class has the required definiteness.' 402 U.S. at 153, 91 S.Ct. at 1361 (emphasis by the Court.)"

460 F.2d 1041 at 1047. Indeed, United States v. Bass, *supra*, distinguished *Perez* on this basis.

"In light of our disposition of the case, we do not reach the question whether, upon appropriate findings, Congress can constitutionally punish the 'mere possession' of firearms; thus, we need not consider the relevance, in that connection, of our recent decision in Perez v. United States, 402 U.S. 146 [, 91 S.Ct. 1357, 28 L.Ed. 2d 686] (1971). The question whether the definition of 'felony' in § 1202 (c) (2) creates a classification violating the Fifth Amendment was not raised in the Government's Petition for Certiorari, and is also not considered here." 404 U.S. 336 at 339, note 4, 92 S.Ct. 515 at 518.

We turn to appellant's challenge to the sufficiency of the evidence. The prosecution's strongest case was made by the testimony of James McCloud and his fifteen year old son. McCloud testified that he had a desperate need for money and turned to appellant for a loan of $35. On cross-examination he was asked:

"Q All right. Now, when you made that loan from John Webb, were you scared of him at that time?

A I was kind of—I was kind of scared; yes, sir; I just needed it and didn't have no other way to get it.

Q Now, you went there voluntarily, and you needed the money, and he let you have it, didn't he?

A Yes, sir.

Q Now, I will ask you if any threats were made to you at that time, and John Webb told you, now, when you made the loan, that he

—did he tell you anything; he say, 'James if you don't pay me back, now, I am going to beat you up or shoot you or kill you or send you to hell'?

A At that time, onliest thing he told me, say, 'I am going to let you have the money. Now, you know I don't play about my money.' "

On the Friday after the loan was made Webb told him he now owed $70. McCloud paid him $35. The next Friday Webb returned to McCloud's place of business and demanded that he again be paid $70. McCloud paid him $58. The next week Webb demanded $100. McCloud refused to pay anything further and was subsequently assaulted by the appellant.

On one occasion McCloud and his son heard Webb drive up to their home. McCloud ran out the back door as Webb, pistol in hand, entered through the front door. The prosecution has made out all the necessary elements of offenses under both §§ 892 and 894. Compare United States v. Antonelli, 439 F.2d 1068 (1st Cir., 1971); United States v. DeLutro, 435 F.2d 255 (2nd Cir., 1970); United States v. Joines, 327 F.Supp. 253 (D.C. Del., 1971); United States v. Curcio, 310 F.Supp. 351 (D.C., Conn.1970). Since the general sentence of eight years imposed on appellant was less than the statutory maximum of twenty years on each count, we need not under the concurrent sentence doctrine consider the sufficiency of the evidence on the remaining counts.

We turn, therefore, to a consideration of appellant's attack on the fairness of the trial itself. Webb's contentions in this respect are twofold; first, that the court erroneously permitted the admission of evidence of his reputation for violent collection practices in circumstances other than those specified by §§ 892(c) and 894(c), and, secondly, that the United States attorney prejudiced the trial by his references to appellant. The record reveals that appellant's con-

tentions in the first regard are unfounded.

 Section 892(c) requires two prerequisites before evidence of reputation of collection practices is admissible to show the understanding of the debtor and the creditor at the time of the extension of credit.[2] Similar requirements are present under § 894(c). The record reveals the prerequisites were established leaving the question of admissibility of such evidence to the trial judge's discretion. Presumably the court is to strike a balance between the prejudice to the appellant and the prosecution's need for the evidence to make its case. In the first instance this weighing process is for the district judge, subject to appellate reversal for manifest abuse of his discretion. This, however, is not our case.

Appellant urges his second contention as a matter of plain error, subject to review without the necessity of a prior objection under Federal Rules of Criminal Procedure, 52(b).

As has been held in innumerable cases, it is the defense's burden to object to improper prosecutorial argument. Objection permits both the trial judge and the prosecutor himself to defuse, if possible, any prejudice inuring to the defendant. In the absence of an objection this court, pursuant to the mandate of F.R.Cr.P. 52(b), will consider assumed improprieties in the prosecutor's jury arguments which constitute "plain error." United States v. Lamerson, 457 F.2d 371 (5th Cir., 1972); United States v. Brown and Hayes, 451 F.2d 1231 (5th Cir. 1972); United States v. Fuentes, 432 F.2d 405 (5th Cir., 1970); Hall v. United States, 419 F.2d 582 (5th Cir., 1969); Rotolo v. United States, 404 F.2d 316 (5th Cir., 1968); Sikes v. United States, 279 F.2d 561 (5th Cir., 1960). Compare United States v. Briggs, 457 F.2d 908 (2nd Cir., 1972); United States v. Strauss, 443 F.2d 986 (1st Cir., 1971). The characterization of Webb as a "hood-lum," "criminal," or "Black Jesus" asserted as plain error, however, does not rise to that level. Unlike Hall v. United States, *supra,* or Steele v. United States, 222 F.2d 628 (5th Cir., 1955), this shorthand characterization of appellant was based on the evidence adduced at trial, which included testimony of appellant's reference to himself in some of those terms. Since we do not find plain error in the prosecuting attorney's jury argument, any supposed impropriety was waived by the failure to offer timely objections.

The judgment of the district court is affirmed.

---

2. See text of the statute quoted at length, supra, at note 1.