**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jack F. GARBER, Defendant-Appellant.**

**No. 71–3432**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Dec. 26, 1972.

---

9. For the procedure followed by one district court, see United States v. 327 Acres of Land, 320 F.Supp. 844 (N.D. Ga.1971).

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Harry Lee Hudspeth, El Paso, Tex. (Court appointed), for defendant-appellant.

William S. Sessions, U. S. Atty., Ralph E. Harris, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, GODBOLD and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Appellant Jack F. Garber was indicted under the Dyer Act for transporting in interstate commerce a stolen motor vehicle, knowing it to have been stolen. 18 U.S.C.A. § 2312. He was found guilty by a jury and was sentenced to five years in prison. He took the stand to testify as a witness in his own behalf, and the government introduced into evi-

dence his prior Dyer Act convictions to impeach his credibility.

On appeal, Garber contends that the prosecuting attorney committed reversible error when he argued to the jury that Garber's prior convictions for the same crime showed a disposition to commit the offense presently charged. The government admits that the argument was improper, but contends that the point was waived by the failure of defendant's attorney to object and that, in any event, the error was "harmless." We think the argument constituted plain and reversible error.

One of the most difficult questions confronting a defendant who has a record of prior criminal convictions is whether to testify as a witness in his own behalf.[1] If he does testify, he does so as an ordinary witness, and evidence of prior convictions may be introduced to impeach his credibility. But, learning of the prior convictions, the jurors may have a natural tendency to let the prior criminal conduct lead them to conclusions beyond the scope of defendant's credibility, despite the Court's strict instructions to the contrary. If defendant does not testify, however, the jury will not learn of his criminal record, but it may be naturally inclined to infer from his silence an admission that he cannot truthfully deny or explain the evidence connecting him to the crime.[2] Thus, defendant becomes trapped between the Scylla of actually telling the jury of his criminal past, to his detriment, and the Charybdis of failing to exculpate himself from this particular crime.

 Two conflicting rules of evidence are responsible for this situation. The first is that a prior criminal conviction is irrelevant to prove whether or not defendant is guilty of the crime charged. Such evidence is therefore initially inadmissible. The other rule is that the credibility of any witness may be impeached by evidence of his prior criminal convictions. The evidence is therefore admissible, after the witness testifies. The conflict between these two rules thrusts the defendant onto the horns of a dilemma.

The danger arising from evidence of prior criminal convictions is that the jury may be unable to restrict the use of this evidence to the proper purpose. Instead of limiting its probative value solely to a determination of defendant's credibility as a witness, the jury may use the prior criminal conduct to draw either or both of two legally impermissible inferences: (1) that the defendant should be convicted because he has committed a previous crime and, therefore, probably committed the crime presently charged; or (2) that any doubts should be resolved against defendant because the evidence of prior criminal behavior demonstrates that he is a "bad man."

The practice of impeaching the credibility of a witness with prior conviction evidence has evolved from the common law theory that a person convicted of an "infamous crime," such as treason, felonies, and acts of falsehood, was incompetent as a witness.[3] The strict doctrine of incompetency was based on the theory that one convicted of an "infamous crime" was a person of such dubious character that he was unworthy of belief and should not be permitted to testify at all.[4] While this theory of incompetency has not persisted in Anglo-American law, the principle of presumed untrustworthiness associated with prior convictions has survived.

The present rationale for admitting prior conviction evidence for impeach-

---

1. *See generally* Comment, To Take The Stand or Not To Take The Stand: The Dilemma of the Defendant With a Criminal Record, 4 Col.J.L. & Soc. 215 (1968).

2. See 3A J. Wigmore, Evidence §§ 890–891 (Chadbourn rev. 1970).

3. See 3 F. Wharton, Criminal Evidence § 752 (12th ed. 1955); McCormick, Handbook of the Law of Evidence § 43 at 89 (1954); 2 Wigmore § 519 at 608 (3d ed. 1940).

4. 1 S. Greenleaf, Evidence §§ 372, 373 (16th ed. 1892).

ment purposes is that the jury should be informed about the character of a witness who asks the jury to believe his testimony. The record of prior convictions is considered indicative of the defendant's criminal nature which, in turn, suggests a propensity to falsify his testimony: "[t]he reason for disbelieving the witness is his supposed readiness to lie inferred from his general readiness to do evil which is predicated upon his former conviction of a crime." [5]

Although firmly entrenched in criminal justice procedures,[6] the admission of prior conviction evidence to impeach the defendant's credibility has been persistently criticized in recent years.[7] These criticisms fall into essentially two categories.

First, some critics argue that the theory underlying the use of prior conviction evidence to impeach credibility is often too tenuous to withstand a relevancy attack. As Chief Justice Burger pointed out while on the Court of Appeals for the District of Columbia,

"In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity. Acts of violence, on the other hand, which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity." [8]

Thus, under this view, not all crimes are relevant to the question of veracity.

Second, other critics argue that the criminal justice system expects too much of a juror when it asks him to distinguish between impeaching evidence and substantive evidence. Although prior conviction evidence should be used only for evaluating the defendant's credibility, available empirical studies seem to indicate that jurors may often be unable to divorce completely this evidence from the material issues.[9] The resulting mental confusion may lead the jury to consider the prior conviction evidence improperly, either as conclusive of defendant's general criminal tendencies or as indicative of guilt in the particular circumstances on trial. Moreover, the actual effect of the standard limiting instruction, by which the Court instructs the jury to limit its consideration of the prior conviction evidence to credibility purposes only, has long been viewed with skepticism: "Thus, with a wave of the evidentiary wand, what previously was too prejudicial to be heard by the jury becomes reliable, valid evidence." [10] Hence a growing number of judges and commentators articulate a concern for the probative value of prior conviction evidence, especially when juxtaposed against its prejudicial effects on the jury. The evidence may not always reflect directly upon credibility, and the jury may not always have the mental discipline to consider it only for impeachment purposes.

These comments are not made for the purpose of criticizing or weakening the long-established rule in this Circuit that, when a defendant takes the witness stand to testify in his own defense, he puts his character in issue and the prosecution may attempt to impeach

5. Ladd, Credibility Tests-Current Trends, 89 U.Pa.L.Rev. 166, 176 (1940).

6. See McCormick § 43 at 89–90; 2 Wigmore § 488 (3d ed. 1940) (collecting statutory authority).

7. See, e. g., Comment, Admissibility of Prior Convictions to Impeach a Defendant-Witness, 15 S.D.L.Rev. 160 (1970); Comment, To Take The Stand or Not To Take The Stand: The Dilemma of the Defendant With a Criminal Record, supra.

8. Gordon v. United States, 127 U.S.App. D.C. 343, 383 F.2d 936, 940 (1967).

9. See H. Kalven & H. Zeisel, The American Jury (1966).

10. Comment, Impeachment of the Defendant-Witness by Prior Convictions, 12 St. Louis U.L.J. 277, 278 (1967); see, e. g., 6 W. Jones, Commentaries on the Law of Evidence § 2440–41 (2d ed. 1926); Note, The Limiting Instruction-Its Effectiveness and Effect, 51 Minn.L.Rev. 264 (1966).

# 216

his credibility by presenting evidence of prior convictions of either felonies or crimes involving moral turpitude.[11] Regardless of any criticism, the use of prior conviction evidence to impeach credibility is generally accepted as fair and proper. But the preceding discussion points up the fact that it is impermissible for the jury to use the prior conviction evidence for the purpose of considering either defendant's general bad character or his disposition to commit crimes.[12] The general rule against using prior conviction evidence as substantive evidence of guilt is as firmly entrenched as is the rule of admissibility for impeachment purposes.[13]

The critical balance between the permissible and impermissible uses of the prior conviction evidence, and the mental discipline required of the jury to restrict the use of this evidence require that the Court, counsel, and all persons appearing before the jury exercise the same discipline required of the jurors. A prophylactic atmosphere must permeate the trial if this rule of evidence is to be properly applied. The failure to maintain this atmosphere in Garber's trial requires us to decide that the error here was so fundamental as to survive the failure of counsel to object, an error which cannot be considered harmless.

■ Defendant Garber admitted under cross-examination that he had been convicted twice previously of Dyer Act violations, the same crime for which he was presently being tried. The fact that the previous crimes were the same or similar to the one presently charged makes no difference. The credibility of a Dyer Act defendant may be impeached with evidence of a prior Dyer Act conviction.[14]

In his rebuttal summation to the jury, the prosecutor twice argued that the evidence of the prior convictions showed Garber's propensity to commit this particular crime. Here was a trained attorney, an officer of the Court, a representative of the United States Government, encouraging the jury to consider this evidence for a prohibited purpose, a purpose for which it would be clearly inadmissible:

"Now, what is the interest of Mr. Garber? A man who was convicted of the same offense in 1968, a man who was convicted of the same offense in 1959, *a man who admittedly, and according to his own attorney, is qual-*

11. *See, e. g.,* United States v. Bedgood, 453 F.2d 988 (5th Cir. 1972) ; United States v. Bray, 445 F.2d 178 (5th Cir.), cert. denied, 404 U.S. 1002, 92 S.Ct. 571, 30 L.Ed.2d 555 (1971) ; Loper v. Beto, 440 F.2d 934 (5th Cir. 1971), vacated and remanded on other grounds, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972) ; United States v. Justice, 431 F.2d 30 (5th Cir. 1970) ; Bendelow v. United States, 418 F.2d 42 (5th Cir. 1969), cert. denied, 400 U.S. 967, 91 S.Ct. 379, 27 L.Ed.2d 387 (1970). *See also* McCormick, § 43 at 89 (1954).

12. *See, e. g.,* Michelson v. United States, 335 U.S. 469, 475–476, 69 S.Ct. 213, 93 L.Ed. 168 (1948) ; United States v. Deaton, 381 F.2d 114, 117 (2d Cir. 1967) ; United States v. Stirone, 262 F.2d 571, 576 (3rd Cir. 1959), rev'd on other grounds, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) ; United States v. Sweeney, 262 F.2d 272, 277 (3rd Cir. 1959) ; *see also* Parker v. United States, 400 F.2d 248 (9th Cir. 1968), cert. de-

nied, 393 U.S. 1097, 89 S.Ct. 892, 21 L.Ed.2d 789 (1969) ; Railton v. United States, 127 F.2d 691 (5th Cir. 1942). The prosecution is, of course, entitled to show the defendant's bad character if the defendant introduces evidence showing that he is a person of good character. Michelson v. United States, *supra. See also* United States v. Harrell, 436 F.2d 606 (5th Cir. 1970) ; Railton v. United States, *supra;* 1 J. Wigmore, Evidence § 58 at 457 (3d ed. 1940) ; 1 F. Wharton, Criminal Evidence § 221 at 457 and fn. 18 (12th ed. 1955).

13. *See* 1 Wigmore § 194 (3d ed. 1940) ; McCormick § 157 at 327 (1954).

14. *See* United States v. Bray, *supra;* Bendelow v. United States, *supra.* As we stated in *Bendelow:* "[W]e are unwilling to sponsor for this Circuit a rule which would immunize a criminal defendant from attacks on his credibility by proof of prior convictions so long as he is careful to repeat his original offense in subsequent transgressions." 418 F.2d at 49.

*ified to sell stolen cars in Mexico,* and who stands before you now indicted for the same offense. . . .

Now, he is not on trial—*he is not on trial for these previous offenses, but you should consider that evidence when you . . . consider whether or not this Defendant could commit an act like this.* You go back, you go back to 1959, you go back to 1968; he has done it on two other occasions. He freely admits it. He admits to being in trouble with the law on other occasions. *So, you consider that when you consider his disposition to commit this act.*" (Emphasis added.)

No objection to this line of argument was raised by Garber's trial counsel.

 Without doubt, "[i]t is the defense's burden to object to improper prosecutorial argument. Objection permits both the trial judge and the prosecutor himself to defuse, if possible, any prejudice inuring to the defendant." [15] When no objection is made at trial, however, this Court is bound to consider error, apparent on the face of the record, which rises to the level of "plain" or "fundamental" error. [16] A serious question arises in this case as to whether anything the Court or prosecutor might have said would have undone the harm inflicted when the jurors were told to consider the evidence for an improper purpose, which they might be naturally inclined to do if left uninstructed. Where it is questionable that an error could have been cured by mere correction by counsel or by an instruction

from the Court, the error rises to the level of plain and fundamental error. Certainly the trial judge's later charge to the jury, in which he instructed that the prior conviction evidence was admissible only to impeach Garber's credibility, was at best too little and too late under the circumstances of this case. We do not here consider whether an immediate curative instruction could have neutralized the prejudicial effect of this improper argument. Such an instruction might not have been effective, and that doubt itself underscores the seriousness of the error. [17]

 As to the government's "harmless error" argument, this Circuit has applied that principle only where evidence of the defendant's guilt was exceptionally strong and the error appeared to have been harmless beyond a reasonable doubt. [18] The question is not merely whether a mistake was made in applying technical rules of evidence but whether that mistake resulted in prejudicial error clearly affecting the substantial rights of the accused. [19] Garber had a right to the benefit of the rule prohibiting the use of the prior convictions to prove that he committed this crime. The prosecutor's remarks were intended to influence the jury in a way that would deprive him of that right. Considering the evidence as a whole, we cannot be sure that the prosecutor was unsuccessful. [20]

The government's evidence essentially consisted of two elements: the salesman's identification of Garber as the

15. United States v. Webb, 463 F.2d 1324, 1328 (5th Cir. 1972).

16. F.R.Crim.P., Rule 52(b); United States v. Webb, *supra*; United States v. Lamerson, 457 F.2d 371 (5th Cir. 1972); United States v. Brown, 451 F.2d 1231 (5th Cir. 1971). *See also* United States v. Fuentes, 432 F.2d 405 (5th Cir. 1970), cert. denied, 401 U.S. 919, 91 S.Ct. 904, 27 L.Ed.2d 822 (1971).

17. "The Moving Finger writes; and, having writ, Moves on: nor all your Piety nor Wit, Shall lure it back to cancel half a Line, Nor all your Tears wash out a Word of it." Rubaiyat, Stanza 71.

18. Hoover v. Beto, 467 F.2d 516 (5th Cir. 1972) [1972, en banc at 538]. *See also* Martin v. United States, 453 F.2d 1370 (5th Cir. 1972).

19. *See* United States v. Williamson, 450 F.2d 585, 591 (5th Cir. 1971), cert. denied, 405 U.S. 1026, 92 S.Ct. 1297, 31 L.Ed. 2d 486 (1972).

20. Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). See United States v. Roland, 449 F.2d 1281, 1282 (5th Cir. 1971).

man who drove the car from a used car lot for a test drive, and the fact that Garber was arrested in Mexico while driving that same car. Garber had held steadfastly to his version of the facts, that he was acting as an agent to sell the car for a third party. The salesman's identification was critical to the prosecution and was made two and one-half months after the alleged incident at the car lot.

With these facts in issue, the prosecutor's suggestion that the jury consider the previous conviction evidence as indicative of Garber's disposition to violate the Dyer Act deprived Garber of a fair trial. We therefore reverse his conviction and remand the case for a new trial.

Reversed and remanded.

GODBOLD, Circuit Judge (specially concurring):

I concur in Judge Roney's careful analysis, while adding some brief additional comments.

As I pointed out in my partial dissent in Bendelow v. United States, 418 F.2d 42 (5th Cir. 1969), cert. denied, 400 U.S. 967, 91 S.Ct. 379, 27 L.Ed.2d 387 (1970), in this Circuit admissibility of evidence of prior conviction for impeachment purposes is a matter subject to the discretion of the trial judge. He is not mandated either to admit such evidence or to exclude it. As in numerous other instances of potentially prejudicial evidence, he has discretion to balance relevant factors and to determine whether probative value is outweighed by prejudicial effect. *Bendelow, supra,* n. 1, 418 F.2d at 50–51.

And, even within the range of admitting the evidence, the court is not bound to let it all in, hog, hide and tallow. The judge may simply limit the interrogation to proof of the number of convictions and the fact that they were felonies, without any reference which would give the jury to understand that they were for precisely the same offense. This approach is particularly appropri-

ate where the prior conviction is for the same offense with which presently charged. The court need not choose between "letting the defendant appear as 'a witness of blameless life,' McCormick, Evidence, p. 94 (1954), and having him appear as a [twice] convicted Dyer Act violator." *Bendelow, supra,* 418 F.2d at 52. Here, as in *Bendelow,* by such a rational limitation of inquiry, "[t]he prejudice to appellant would have been removed. The prosecution would have obtained substantially all the legitimate benefit it sought by showing the appellant not credible because a repetitive felon. The difference between lack of credibility as a repetitive felon and lack of credibility as a repetitive car thief was negligible to the prosecution, catastrophic to the accused." Id. at 52–53.