**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas Earl DAVIS,
Defendant-Appellant.**

No. 87–1001.

United States Court of Appeals,
Fifth Circuit.

Oct. 15, 1987.

**64**

Ward Casey, Fort Worth, Tex. (court appointed), for defendant-appellant.

Sidney Powell, Asst. U.S. Atty., Dallas, Tex., Marvin Collins, U.S. Atty., Frederick M. Schattman, Asst. U.S. Atty., Ft. Worth, Tex., for plaintiff-appellee.

Before THORNBERRY, GARWOOD, and HIGGINBOTHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Thomas Earl Davis was convicted of violating 18 U.S.C. § 922(h), which makes unlawful the possession of certain firearms by a person convicted of a crime punishable by imprisonment for more than one year. Davis appeals, contending that improper jury argument by the prosecutor impaired his right to a fair trial. Because we agree with the district judge's rulings on Davis' objections to the argument, and because we find that the parts of the argument that were not objected to did not rise to the level of plain error, we affirm.

### I.

To analyze the prosecutor's argument in context, it is necessary to understand the facts surrounding Davis' arrest. As Davis admitted in his brief to this court, "[t]he only disputed issue in the case was whether Defendant knew that the shotgun was in his pickup prior to its discovery by the arresting officers." Thus, we accept the following facts, which were testified to during trial, for purposes of this appeal.

On June 24, 1986, while investigating a report regarding stolen cars, a Fort Worth police officer saw Davis approaching in a pickup truck. When Davis got out of the truck, the officer noticed a shotgun underneath the truck's seat. Other officers then saw another person move Davis' truck and park it a short distance away. Davis and another man, Leon Penny, then approached and drove the truck away. The police officers followed the truck, intending to stop Davis and Penny. The officers signaled for Davis, the driver, to stop. After driving four more blocks, Davis pulled the truck into a driveway. Testimony at trial indicated that Davis and Penny had both looked back at the police car while it was following them.

Immediately after the truck pulled into the driveway, the police, who had taken cover behind their cars because they had been advised that there were weapons in the truck, ordered Davis and Penny out of the vehicle. Davis immediately walked away from the truck with his hands in the air. In addition, Davis stopped walking and lay face down on the ground when the police ordered him to do so. Meanwhile, the police were having some difficulty with Penny. The officers ordered Penny several times to leave the truck and raise his hands, but he did not do so. Instead he leaned forward into the truck. Other officers approached Penny from his blind side and again told him to raise his hands, which he finally did. The police then noticed a pistol on the ground near Penny. Upon examining the truck, the police found a shotgun, ammunition, and an empty holster. Davis was arrested.

At trial on charges of possession of firearms by a felon, Davis stipulated that he had been convicted of "aggravated assault with a deadly weapon, to wit a firearm." Davis also stipulated that this offense was punishable by imprisonment for a term exceeding one year.

### II.

After evidence of these facts was presented at trial, the prosecutor made sev-

eral statements in his closing argument that are the subject of this appeal. We will address these statements one at a time.

The first arguably improper argument occurred when the prosecutor stated that "Thomas Earl Davis has been to the State penitentiary for causing serious bodily injury by shooting somebody with a gun." Davis' attorney immediately objected, arguing that the statement involved evidence outside the record, and the judge sustained the objection. Upon a request for an instruction to the jury to disregard the statement, the judge said to the jury, "You will not consider that remark." A motion for mistrial followed, which was overruled.

The prosecutor's statement was clearly outside the record. There was no evidence that Davis had been sent to the penitentiary, that he had actually caused serious bodily injury to anyone, or that he had shot anyone with a gun. The parties had stipulated that Davis had been convicted of aggravated assault with a firearm, but that offense can be committed merely through threats; the gun need never be fired and the victim need not be physically injured. Tex. Penal Code Ann. § 22.02(a)(2) (Vernon 1974 & Supp. 1987). As noted above, however, the trial judge sustained Davis' objection and instructed the jury to disregard.

Federal Rule of Criminal Procedure 52(a) states that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." To determine whether the improper argument affected Davis' substantial rights, we must consider "(1) the magnitude of the prejudicial effect of the statements; (2) the efficacy of any cautionary instructions; and (3) the strength of the evidence of the defendant's guilt." *United States v. Cardenas,* 778 F.2d 1127, 1131 (5th Cir.1985).

Davis relies on *United States v. Garber,* 471 F.2d 212, 217 (5th Cir.1972) to show that his substantial rights were affected. In *Garber* the court found the prosecutor's improper use of prior conviction evidence to be "fundamental" error. *Garber,* however, involved the use of prior conviction evidence in circumstances that made the evidence much more prejudicial than in the

current case. For example, Garber's prior convictions were not elements of the offense for which he was being tried; Davis' prior conviction, by contrast, was an element of his offense. Moreover, the prosecutor in *Garber* repeatedly argued that the prior convictions showed Garber's propensity to commit the crime of which he was accused. *Id.* at 216–17. As the court stated, such arguments used the evidence "for a prohibited purpose, a purpose for which it would be clearly inadmissible." *Id.* at 216. In contrast, in the current case the prosecutor did not base any arguments on the prior conviction evidence but merely mentioned the fact of the prior conviction.

There is no reason to believe that the prosecutor's statements, although clearly improper, affected Davis' substantial rights, for "there is no reason to believe that the jury failed to follow the judge's curative instruction." *United States v. Bazan,* 807 F.2d 1200, 1205 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987). Moreover, any harm that Davis would normally suffer because of prosecutorial statements of this type was lessened by the fact that the jury already knew the substantially prejudicial fact of Davis' conviction for aggravated assault with a firearm. This lessened harm combined with the judge's prompt instruction to the jury lead to the conclusion that the effects of this statement were harmless.

### III.

■ The second argument that Davis contends was improper occurred when the prosecutor summarized the facts surrounding the arrest:

A few minutes later Thomas Earl Davis, Leon Penny get into that pickup truck, they pull out onto Efraham or 28th Street or River Oaks Boulevard or whatever it's called right along there and they start driving down the road and a decision is made to call on Officer McCalin to stop the vehicle, people in it and there [sic] guns in it, and they do or he trys [sic] to, pulls in behind it, turns on his emergency lights, car doesn't stop. Fi-

nally he gets it to stop as it pulls into the driveway, still rocking a little bit. Thomas Earl Davis gets out and he comes straight away from it. Leon Penny doesn't—Leon Penny stays in the vehicle. He's ordered out and he's ordered out and he's ordered out and it's only when Officer Mays and Officer Southey get out and it's clear that they are out gunned and outnumbered that Leon Penny gives it up. I suggest to you that there is a reason that Tommy Davis got out of that car and took off at a pretty good clip. You heard Officer Kane getting out and going at a pretty good clip across the yard. Officer Kane saw he [Davis] had nothing in his hands and he directs his attention back to the other fellow. I suggest to you that Tommy Earl Davis was trying to get these officers to come straight up to him right then and Leon Penny had that other gun—

Later, the prosecutor again returned to this theme, stating "Thomas Earl Davis tried to set up Michael Kane as a decoy and a dodge moving away with his hands up in a direct line to Leon Penny." The prosecutor also stated that the officers had "somebody with a gun at his feet and we're lucky that all those men are here today."

Davis' attorney objected to this line of argument. In overruling the objection, the judge stated that the lawyers "have a right to draw their inferences and conclusions" from the evidence, and he told the jury to "remember what the evidence is." Clearly, an attorney may state to the jury the inferences and conclusions he wishes them to draw from the evidence. *United States v. Garza*, 608 F.2d 659, 662 (5th Cir.1979). However, it is also clear that an attorney may suggest only those conclusions and inferences that are based on the evidence. *Id.* at 662–63. Davis contends now, as he did at trial, that there was no evidence to support the inference that he was acting as a decoy. We cannot agree. Several officers testified that Davis walked away from the truck leaving Penny behind, that Penny, while some of the officers were busy with Davis, leaned forward into the truck, and that a gun was found on the ground near Penny. Although it is possible that Davis was not in fact acting as a decoy, suggesting such an inference is permissible on these facts. Thus, the trial court properly permitted the prosecutor to make such an argument.

### IV.

The final statements that concern us are the prosecutor's comments about the police officers who had testified. The prosecutor arguably bolstered his witnesses at least three times with statements such as, "The defense's story to you is a pack of lies. These men don't go out and risk their lives so they can come in here and tell you a bunch of lies." However, because Davis did not object to these statements at trial, he must show that the statements amounted to plain error. Fed.R. Crim.P. 52(b). Plain error is error so great that it cannot be cured at trial; the error "must be obvious, substantial, and so basic and prejudicial that the resulting trial lacks the fundamental elements of justice." *United States v. Birdsell*, 775 F.2d 645, 653 (5th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1979, 90 L.Ed.2d 662 (1986). It exists when any attempt to instruct the jury would only serve to focus the jury's attention on the statements. *United States v. Garza*, 608 F.2d 659, 666 (5th Cir.1979). "[T]he plain error exception to the contemporaneous objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)). Davis relies on *Garza* in arguing that the prosecutor's statements did cause a miscarriage of justice. In *Garza*, the prosecutor repeatedly used his own credibility to support the witnesses testimony, stating *"I* think their motives are pure as the driven snow." 608 F.2d at 664 (emphasis added). Additionally, he stated, "if I ever thought that I had framed an innocent man and sent him to

the penitentiary, I would quit." *Id.* at 664–65. This statement implied that the prosecutor had personally determined the defendant's guilt and that the jury should consider that determination. *Id.* at 665. The prosecutor also suggested "that the 'government's vast investigatory network' knew, from information not presented at trial, that [the] witnesses were telling the truth." *Id.* at 664. The *Garza* court found that "[w]hile any single statement among those we have isolated might not be enough to require reversal of the conviction—and, indeed, some clearly would not—we think it beyond question that the prosecutor's improper comments, taken as a whole, affected substantial rights of the defendant." *Id.* at 665.

■ In the current case, the prosecutor's comments do not rise to nearly the level of those in *Garza.* All the prosecutor stated was that, as police officers, the witnesses had a duty to be "good and honest" and that they had no reason to lie. The prosecutor did not offer to the jury as evidence his independent determination of the credibility of a witness or the guilt of the defendant. *See United States v. Nanez,* 694 F.2d 405, 410 (5th Cir.1982) (holding that for bolstering to constitute plain error, the prosecutor must intertwine "his personal and official credibility with the credibility of the witnesses"), *cert. denied,* 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983). The prosecutor did not suggest that he or the government had any evidence not presented at trial indicating Davis' guilt. *United States v. Ellis,* 547 F.2d 863, 869 (5th Cir.1977) (holding that the test for improper vouching rests on whether the prosecutor's statements might reasonably have led the jury to believe that the prosecutor possessed extrinsic evidence which convinced the prosecutor of the defendant's guilt). Even assuming the prosecutor's statements could be stretched to imply some such extrinsic evidence, the statements clearly are not overtly improper statements, such as those in *Garza,* that rise to the level of plain error.

V.

For reasons set forth above, we AFFIRM the district court.