**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Fernando MIRANDA, Defendant-Appellant.**

No. 77–5814.

United States Court of Appeals, Fifth Circuit.

April 12, 1979.

Marc Cooper, Lawrence E. Besser, Donald I. Bierman, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., R. Jerome Sanford, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, TUTTLE and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

In this case we examine appellant Miranda's claim[1] that the prosecutor's reference

---

1. Because we reverse Miranda's conviction due to the prosecutor's improper closing argument, we need not reach, with the exception of the

discussion in part III, *infra,* the other points of error he urges on appeal. Nonetheless, because it might become important upon retrial

in closing argument to his coconspirator's conviction on less evidence than that presented against appellant deprived him of a fair trial. We find merit to Miranda's contention and reverse and remand his case for a new trial.

## I.

After an earlier attempt at importation had to be aborted, Fernando Miranda and his coconspirators decided to land a boatload of marijuana on the evening of January 30, 1976, at Bella Vista Point on Biscayne Bay, near Coral Gables, Florida. This attempt was foiled by the efforts of a Coral Gables police officer who discovered the conspirators' Ryder rental truck while on a routine patrol that evening. As the officer approached the truck, he detected the odor of marijuana and heard people in the truck speaking in Spanish. Suddenly he heard people running out of the truck. The officer pursued these people into the dense mangrove area surrounding the Bay; three suspects were subsequently apprehended by the officer in an adjacent swamp. Investigating officers later found some twenty-three tons of marijuana in the surrounding area.

An investigation of this incident, conducted primarily by the Coral Gables Police Department, culminated with an indictment being issued against five individuals for offenses arising out of the Bella Vista importation scheme. Some thirteen months later, on August 11, 1977, a superceding indictment was issued charging Miranda and others with conspiracy to import marijuana in violation of 21 U.S.C. § 963; importation of marijuana in violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2; possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and possession of a firearm during the commission of a felony in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2.

Miranda was tried alone. He was convicted on all four counts and sentenced to consecutive sentences of four years for the conspiracy to import charge, three years and six months for both the possession with intent to distribute and the importation charges, and two years for the possession of a firearm charge. Miranda now brings this appeal, arguing, among other things, that the prosecutor's prejudicial comments during closing argument deprived him of a fair trial.

## II.

Jose Pedro Perez was a coconspirator of Miranda's and prior to Miranda's trial was tried and convicted of substantially the same offenses [2] as Miranda. Following his conviction, and while awaiting sentencing, Perez became a fugitive. After seven months, he turned himself in and cooperated with the government, becoming the key witness in Miranda's trial.

Miranda objects to the prosecutor's final argument, in which he suggested to the jury that they should find Miranda guilty because an earlier jury had found Perez

---

of the case, we pause to comment on the trial judge's decision to seal the transcript of Perez' bond hearing.

After Perez surrendered himself to the authorities, the trial court held a hearing at which he released the defendant on a $75,000 personal recognizance bond. The trial judge was of the opinion that some of the matters discussed at the hearing were rather sensitive and if divulged could seriously jeopardize ongoing investigations by the Drug Enforcement Administration and the Coral Gables Police Department; consequently, the transcript of the hearing was ordered sealed. In response to appellant's motion to unseal the transcript, Judge Gee ordered that the transcript be unsealed except as to one segment of the transcript, which he ordered was to remain sealed. This order was subsequently reconsidered by a three-judge panel, which denied appellant's motion to unseal any further portions of the bond hearing transcript.

Appellant now asks us to reconsider the prior panel's decision. We decline to do so, since our own independent review of the transcript and the record as a whole convinces us that the portion of the hearing sealed should remain so.

2. Although the prosecutor argued to the jury in closing argument that Perez had been convicted of the four counts in Miranda's indictment, this assertion is slightly incorrect; Perez was acquitted by the jury on the substantive count of importation.

guilty of the same offenses [3] on substantially less evidence. In the introduction to his closing argument, the prosecutor made the following statement:

> You recall that Mr. Perez was indicted prior and tried back in October of 1976.
>
> At that time, of course, we didn't have the benefit of his testimony. He had entered a plea of not guilty and went to trial and was found guilty of a conspiracy charge, of a possession with intent to distribute marijuana charge, of the importation of marijuana charge, and of the possession of the firearms charge.
>
> But I think you will also recall, if you can recall the testimony as it came out, at no time did we ever show that Perez was either on the scene at Bella Vista Point or that he actually handled any marijuana or that he actually possessed any firearm except at the time that he actually purchased the firearm on January 28, 1976.
>
> Yet, he was found guilty based upon the evidence that we presented at that time.
>
> Now, in the trial of Mr. Fernando Miranda, we have the benefit of Mr. Perez' testimony. We were able to lay out to you what we had primarily circumstantial evidence of before. And this came in the form of Mr. Perez' direct testimony of Fernando Miranda's involvement in the conspiracy. . . .

And in the peroration to his closing argument in rebuttal, the prosecutor reiterated these comments:

> Now, as I said before, Jose Pedro Perez is not on trial.
>
> But at that time, approximately a year ago, thirteen months, he was, and Mr. Osmond said: 'He came into court and pled not guilt[y]. And at that time, he was presumed innocent, and the burden of proof was on the government to prove him guilty.'
>
> And he sat at that table where Frank Miranda is sitting right now.
>
> And I would suggest to you, that thirteen months later, on the same offense, Frank Miranda sitting where Jose Pedro Perez was, that he is charged with four counts in this indictment. Perez was found guilty of four counts in the indictment.
>
> And I'm asking you to return a verdict of guilty as to Fernando Miranda as to the four counts of the indictment.

We agree with appellant that the clear import of the prosecutor's argument was that the jury should convict appellant because an earlier jury had convicted his co-conspirator of the same charges on much less evidence. We reject as specious the government's attempt to characterize the prosecutor's argument as involving simply a "colorfully drawn" analogy between Perez and Miranda; instead, we deal here with an overzealous prosecutor who has deprived the defendant of a fair trial by deliberately urging the jury on two occasions to use evidence for a prohibited purpose.

The Supreme Court has spoken of the important duties of a prosecutor in this area:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

We feel that a foul blow has been struck here, one which has affected the substantial rights of the defendant and requires a new trial free of such prejudicial comments.

---

3. *See* note 2 and accompanying text, *supra.*

■ Our cases clearly establish that a defendant is entitled to have the question of his guilt determined upon the evidence against him, not on whether a codefendant or government witness has been convicted of the same charge.[4] *United States v. Fleetwood,* 528 F.2d 528 (5th Cir. 1976); *United States v. Davis,* 487 F.2d 112 (5th Cir. 1973), *cert. denied,* 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974); *Babb v. United States,* 218 F.2d 538 (5th Cir. 1955); *Leroy v. Government of Canal Zone,* 81 F.2d 914 (5th Cir. 1936). This rule of exclusion is founded upon the notion that a codefendant's guilty plea or conviction with respect to similar or identical charges has only slight probative value on the question of the defendant's guilt, but is extremely prejudicial. *United States v. Corona,* 551 F.2d 1386, 1388 (5th Cir. 1977); *United States v. Hansen,* 544 F.2d 778, 780 (5th Cir. 1977). Miranda had a right to benefit from the rule prohibiting the use of the convictions of his coconspirator to prove his guilt and the prosecutor denied him that right by urging the jury to consider Perez' convictions as substantive evidence of Miranda's guilt. *See United States v. Garber,* 471 F.2d 212 (5th Cir. 1972).

Not only did the prosecutor improperly urge the jury to consider Perez' convictions as proof of Miranda's complicity in the importation scheme, but his argument is also improper because it is based on evidence not in the record. *See United States v. Corona,* 551 F.2d 1386 (5th Cir. 1977); *Hall v. United States,* 419 F.2d 582 (5th Cir. 1969). In urging the jury to convict Miranda, the prosecutor emphasized that Perez was convicted on evidence which was largely circumstantial, whereas the evidence against Miranda was direct in nature, thus implying that the evidence was much stronger against Miranda. This argument was clearly improper because nothing was introduced at Miranda's trial to show what had been proved at Perez' trial.

■ Our conclusion that the prosecutor's comments were improper does not end our analysis, however. As the government correctly points out, this case must be judged according to the "plain error" standard set forth in Fed.R.Crim.P. 52(b) because Miranda's counsel never objected to the prosecutor's argument. An objection is required because a prompt objection by counsel will allow the trial court to take appropriate action to cure the error, usually by giving limiting instructions to the jury. *See United States v. Fleetwood,* 528 F.2d 528, 535 (5th Cir. 1976); *United States v. King,* 505 F.2d 602, 605 (5th Cir. 1974). Accordingly, we may reverse the conviction only if the prosecutor's indiscretions seriously affected the substantial rights of the accused. *United States v. King,* 505 F.2d 602, 605 (5th Cir. 1974); Fed.R.Crim.P. 52(b).

■ "[W]hen an appellate court should take notice of an error not raised below must be made on the facts of the particular case, and there are no 'hard and fast classifications in either the application of the principle or the use of a descriptive title.'" 2 Wright, *Federal Practice and Procedure* § 856 at 373 (1969), quoting *DuPoint v. United States,* 388 F.2d 39, 45 (5th Cir. 1968). Thus, in determining whether Miranda's substantial rights have been prejudiced, we must look to a variety of factors: the presence or absence of a limiting instruction; whether there was a proper purpose in introducing the conviction or guilty plea of the codefendant; whether the plea or conviction was improperly emphasized or used as substantive evidence of guilt; whether the alleged error was invited by defense counsel; whether an objection was entered or an instruction requested; whether the failure to object could have been the result of tactical considerations; and whether, in light of all the evidence, the error was harmless beyond a reasonable doubt. *United States v. Fleetwood,* 528 F.2d 528 (5th Cir. 1976); *United States v. King,* 505 F.2d 602, 608 (5th Cir. 1974).

4. Nonetheless, the conviction or guilty plea of a coconspirator is admissible for limited evidentiary purposes such as impeachment. *United States v. Fleetwood,* 528 F.2d 528 (5th Cir. 1976).

Taking into consideration these variables, our review of the record convinces us that the prosecutor's comments rise to the level of plain error; Miranda's substantial rights have been severely abused.

■ In an effort to persuade us that this is not a case involving plain error, the government contends that defense counsel "invited" the prosecutor's comments by utilizing Perez' prior convictions as a method of impeaching him; they contend that the prosecutor's remarks were a proper response to the attack on Perez' credibility. We disagree, and this point perhaps best illustrates the difference between the present case and those relied upon by the government.[5] Miranda is not complaining about the introduction of the fact of Perez' convictions. Here Miranda's trial strategy with respect to Perez was to attempt to discredit him by exposing his prior convictions to the jury; where such a situation clearly appears, it may be proper for the government to bring out the existence of the prior conviction(s) on direct examination. *See United States v. King,* 505 F.2d 602, 609 (5th Cir. 1974); *United States v. Franicevich,* 465 F.2d 467 (5th Cir. 1972). And if the mere introduction of Perez' convictions were the only thing of which Miranda complained, we would not hesitate to affirm his conviction. But Miranda's objec-

tions to what transpired at trial are much more serious. Here the prosecutor stepped beyond the permissible bounds of being able to solicit the existence of the prior convictions on direct examination and instead urged the jury—on two separate occasions—to consider Perez' convictions by an earlier jury as substantive evidence upon which Miranda's jury should rely in reaching its verdict, an impropriety magnified in its prejudicial effect because the jury had no way of knowing the strength of the government's case against Perez. We have not hesitated to find reversible error, even in the absence of an objection, where the government has urged the jury to consider such evidence for the prohibited purpose of substantive evidence of guilt rather than for the permissible purpose of impeachment. *See United States v. Garber,* 471 F.2d 212 (5th Cir. 1972).

■ Thus, we refuse to visit the mistakes of counsel upon this defendant; after the jury had been told to use Perez' convictions as evidence of Miranda's guilt, it is doubtful that *any* curative instruction, promptly given or otherwise, could have erased the prejudice from the minds of the jurors. We have previously recognized "that there may be aggravated circumstances in which [even] the strongest cor-

---

5. *United States v. Franicevich,* 465 F.2d 467 (5th Cir. 1972), one of the cases relied upon by the government, is typical. In *Franicevich* the defendant argued upon appeal that the introduction into evidence of the guilty pleas of coconspirator witnesses as to the underlying substantive offense deprived him of a fair trial and constituted reversible error; the court there *refused to find plain error* because the defendant's strategy from the beginning was to use the prior guilty pleas to impeach the credibility of the witnesses. In *Franicevich,* as in the other cases relied upon by the government, *see United States v. King,* 505 F.2d 602 (5th Cir. 1974); *United States v. Richardson,* 504 F.2d 357 (5th Cir. 1974), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1406, 43 L.Ed.2d 659 (1975); *United States v. Davis,* 487 F.2d 112 (5th Cir. 1973), *cert. denied,* 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974), the impropriety alleged by the defendant was the *introduction* into evidence of the guilty pleas of coindictee-witnesses; in none of the above cited cases did the prosecutor, once the pleas were admitted, ar-

gue to the jury that they should be used as substantive evidence of the defendant's guilt. For example, in *King* the court was careful to note that the prosecution did not even suggest that the guilty plea involved there was relevant to the defendant's guilt. *United States v. King,* 505 F.2d at 606. Miranda objects not to the introduction of Perez' prior convictions, but to the prosecutor's improper suggestions to the jury as to the *use* they were to make of such evidence.

*United States v. Guajardo-Melendez,* 401 F.2d 35 (7th Cir. 1968), presents a factual situation closer to the present one. In *Melendez* the Seventh Circuit refused to find reversible error in the prosecutor's suggestion in closing argument that a codefendant's guilty plea was evidence of the remaining defendants' guilt. But this case is clearly distinguishable from the present one, because the defense counsel in *Melendez invited* the prosecutor's argument by himself arguing that the codefendant's guilty plea was substantive evidence of the remaining defendants' innocence.

rective instruction would be insufficient," *United States v. Richardson*, 504 F.2d 357, 360 (5th Cir. 1974), *cert. denied*, 420 U.S. 978, 95 S.Ct. 1406, 43 L.Ed.2d 659 (1975), *citing United States v. Baete*, 414 F.2d 782, 783 (5th Cir. 1969). And where, as here, we cannot say with certainty that a prompt curative instruction would have eliminated the prejudice, we resolve any doubts in favor of the accused and do not find the absence of an objection to be fatal. *United States v. Garber*, 471 F.2d 212, 217 (5th Cir. 1972). Certainly the *sua sponte* instruction given by the trial judge in this case in his final charge to the jury [6] was insufficient to ameliorate the prejudicial impact of the prosecutor's closing argument; it "was at best too little and too late under the circumstances of this case." *United States v. Garber*, 471 F.2d at 217. We also reject any suggestion that defense counsel's failure to object was the result of tactical considerations.[7]

■ Having found plain error, it tautologically follows that the government cannot hide behind the "harmless error" rule. This rule only operates to excuse error where evidence of the defendant's guilt is exceptionally strong and the error appears to have been harmless beyond a reasonable doubt. *United States v. Garber*, 471 F.2d at 217. The government's case could be charitably described as "adequate" at best, and our prior conclusion that the prosecutor's comments seriously affected the substantial rights of Miranda necessarily precludes any finding of "harmless error."

**6.** The trial court instructed the jury:

Let me say, in that respect, that there has been certain argument during the concluding part of this case by both counsel touching upon the results of a prior trial in which the witness, Perez, was a defendant.

The fact that the witness, Perez, has been earlier tried or found guilty or not guilty, as the case may be, is not a matter that has any bearing whatsoever upon the guilt or innocence of the defendant in this trial; Mr. Miranda.

He is entitled to a separate, fair and impartial consideration by you upon the testimony and the evidence received into this record.

## III.

Appellant also alleges that the evidence was insufficient to support his conviction for importation and conspiracy to import marijuana. *See Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

■ In reviewing the evidence presented at trial, we must view it in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). To reverse Miranda's conviction on these two counts, we must find that a reasonable-minded jury must have had a reasonable doubt as to the existence of any of the essential elements of the crimes charged. *United States v. Buckley*, 586 F.2d 498, 504 (5th Cir. 1978); *United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir. 1973).

■ Miranda's sole contention regarding the sufficiency of the evidence is his assertion that there is no evidence upon which the jury could conclude beyond a reasonable doubt that the marijuana came from outside the United States. Miranda is correct in his assertion that an essential element of the crime of importation, in a case of this type, is proof that the marijuana came from outside the United States. *See United States v. Pentapati*, 484 F.2d 450 (5th Cir. 1973); *United States v. Christian*, 505 F.2d 94 (5th Cir. 1974); 21 U.S.C. § 952(a). Notwithstanding this requirement, it is not necessary for the government to prove that the accused or his coconspirators were actually seen transporting the marijuana into the territorial waters of the United States. *United States v. Gramlich*, 551 F.2d 1359

**7.** We acknowledge the fact that defense counsel might choose to ignore the introduction of a witness' guilty plea or conviction based upon the belief that a corrective instruction would call more attention to the witness' plea or conviction than the introduction of the witness' plea or conviction itself. *See United States v. King*, 505 F.2d 602, 608 n.12 (5th Cir. 1974). Such is not the case here. No legitimate tactical advantage was to be gained by allowing the prosecutor twice to urge the jury to consider Perez' prior convictions as evidence of Miranda's guilt; nor is there any suggestion in the record that counsel's failure to object was the result of a tactical decision.

(5th Cir.), *cert. denied*, 434 U.S. 866, 98 S.Ct. 201, 54 L.Ed.2d 141 (1977); *see also United States v. Ingham*, 502 F.2d 1287 (5th Cir. 1974), *cert. denied*, 421 U.S. 911, 95 S.Ct. 1566, 43 L.Ed.2d 777 (1975).

 We begin by looking at the circumstantial evidence presented by the government. A total of twenty-three tons of marijuana was found at Bella Vista Point. The arresting officer testified that, while in pursuit of the three suspects, he heard a small boat leaving the area; his testimony was corroborated by the back-up officer who testified that he not only observed the same boat speeding away but that he heard a larger vessel in the distance. Although testimony that law enforcement officials have happened upon such an unloading operation provides strong circumstantial evidence of importation, we have held that the mere presence of huge quantities of marijuana on or near the water's edge, standing alone, does not provide sufficient evidence from which a jury could conclude beyond a reasonable doubt that the marijuana was being imported from *outside* the United States. *United States v. Soto*, 591 F.2d 1091 (5th Cir. 1979). Where this type of evidence is combined with other evidence, however, we have found it to be sufficient. *See United States v. Warner*, 441 F.2d 821 (5th Cir.), *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971).

Here the government provided additional evidence sufficient to authorize the jury to find that the marijuana seized was brought from outside the United States. Witness Perez testified that the marijuana came from Colombia: "I was staying in that house like with another five or ten persons waiting until a load of marijuana came from Colombia . . . ." This statement would ordinarily be sufficient to establish the foreign origin of the marijuana, but appellant makes much over Perez' admission, on direct examination, that no one actually *told* him where the marijuana came from:

Q. Did anyone tell you where the marijuana was coming from?

A. No, sir.

Q. Did anybody tell you where the ship was?

A. No, sir.

Although no one may have specifically told Perez that the marijuana came from Colombia, it is obvious that Perez had formed such a conclusion as a result of numerous meetings he had attended with Miranda and other coconspirators. Perez, although not a high-ranking member of the conspiracy, was a trusted confidant and was present at several meetings, all attended by Miranda, at which the importation plans were discussed.

Perhaps the most significant meeting occurred shortly after the aborted landing at Dynamite Docks Point near Key Largo. The Dynamite Docks operation constituted the first attempt to import the twenty-three tons of marijuana later brought in at Bella Vista Point, an effort which had been frustrated by the unexpected presence of police officers at Dynamite Docks on the night the marijuana was to be unloaded. Perez, Miranda, Rumbaugh (another coconspirator) and a man named Pellin, who had just flown in from Colombia, were all present at this meeting. The purpose of the meeting was to discuss plans for successfully unloading the marijuana still remaining on the mother ship. Perez testified that the conversation at the meeting revealed that there was some concern about supplies running low on the mother ship; some fears were also expressed that, unless prompt action were taken, someone might try to steal the marijuana from the ship. Accordingly, those present at the meeting discussed when to bring the marijuana in and how, in the meantime, to get supplies to the mother ship. The method of importation was also carefully reviewed. A lobster boat was to unload the marijuana from the mother ship and two small eighteen-foot boats would be used to shuttle the marijuana from the lobster boat to the shore. (This importation method was identical to the one which was to have been used at Dynamite Docks). The conspirators even went so far as to discuss the code name which was to be used by the lobster

boat in order to identify itself to the mother ship. At the meeting, the man from Colombia was assured that a safe landing point had been selected and that he would get his money.

After this meeting Miranda and Perez surveyed the coastline and selected another site to unload the marijuana. The site that they picked, appropriately named Turkey Point, had to be changed, however, because they overlooked the fact that it was located near a Coast Guard installation. Rumbaugh, dissatisfied with the work of his confederates, selected a site which was later revealed to be Bella Vista Point.

We conclude that from the above evidence a reasonable-minded jury could conclude beyond a reasonable doubt that the marijuana in this case was imported and that Miranda was involved in a conspiracy to achieve that end. Viewing the evidence in a light most favorable to the government, we feel that Pellin's presence at the meeting to discuss the importation plans, when considered in conjunction with the assurances given him at that meeting that he would be paid for the marijuana, would enable a jury to conclude beyond a reasonable doubt that the marijuana came from Colombia.

This case is not controlled by *United States v. Maslanka*, 501 F.2d 208 (5th Cir. 1974), *cert. denied sub nom. Knight v. United States*, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975), relied upon by Miranda. In *Maslanka* the court cited the government's failure to introduce evidence that the ship in question ever went outside United States waters or met with any other vessel that had done so. As a result, the court found lacking the "crucial element of proof [of] . . . a connection between members of the alleged conspiracy and the method of the importation." *Id.* at 216. In the present case, direct testimony by Perez linking the defendant to the scheme of importing over twenty tons of Colombian marijuana through a lobster boat and mother ship rendezvous, as corroborated by police testimony regarding the method of importation, clearly supplied the "crucial element" missing in *Maslanka*.

## IV.

By urging the jury to convict appellant because his coconspirator had been convicted by an earlier jury on even less evidence, the prosecutor deprived Miranda of a fair trial. *See United States v. Corona*, 551 F.2d 1386 (5th Cir. 1977); *United States v. Fleetwood*, 528 F.2d 528 (5th Cir. 1976); *United States v. Wiley*, 534 F.2d 659 (6th Cir.), *cert. denied*, 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 819 (1976); *United States v. Garber*, 471 F.2d 212 (5th Cir. 1972); *United States v. Harrell*, 436 F.2d 606 (5th Cir. 1970). Therefore, we reverse Miranda's conviction and remand his case for a new trial.

REVERSED and REMANDED.