UNITED STATES of America, Plaintiff,

v.

**Robert Ray OSBORNE, Defendant.**

**Crim. No. 81–00014–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

Feb. 23, 1982.

T. J. Bondurant, Asst. U. S. Atty., John S. Edwards, U. S. Atty., Roanoke, Va., for plaintiff.

Hugh P. Cline, Carl E. McAfee, Norton, Va., for defendant.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

### I.

Defendant, Robert Ray Osborne, was convicted by a jury of conspiracy to violate various Federal gun laws.[1] The case is presently before the court on defendant's motion requesting a directed verdict of acquittal, or in the alternative, that the court set aside the jury's verdict and grant a new trial.

---

1. Defendant was found in violation of 18 U.S.C. §§ 922(b)(3), 922(b)(5), 922(d)(1), 922(m), 922(a)(1), 922(a)(5), 922(a)(6), 922(g)(1), 922(j), 924(a), 26 U.S.C. § 5861(b), (d), (e), and 18 U.S.C.App. § 1202(a) (West Supp.1981).

## II.

The Government's evidence showed that the defendant's brother, Ralph Osborne, used the defendant's firearm license to purchase guns in separate transactions with gun dealers in Tennessee, Kentucky and Georgia. Ralph Osborne, a co-defendant and co-indictee, earlier pled guilty to two counts of the indictment charging possession of firearms by a convicted felon and transportation of firearms through interstate commerce. Ralph Osborne sold the guns to an undercover ATF agent during black market activity. The evidence showed that certain guns were mailed by a Georgia gun dealer to the home of Robert Ray Osborne in Lebanon, Virginia. These guns were bought by Ralph Osborne on a license signed by Robert R. Osborne, the defendant. Further, the defendant admitted that he knew Ralph Osborne was buying guns on his license. Finally, the defendant did not record any of the firearms transactions made by his brother.

During its case-in-chief, the Government called Ralph Osborne to the witness stand. The prosecution elicited admissions from Ralph Osborne that he had used the defendant's firearms license to purchase the various guns enumerated in this indictment. Despite the fact that the Government had already proven by a handwriting expert that one of the firearms licenses forms had been signed by Robert Osborne, the defendant, the Government sought to elicit testimony from Ralph Osborne that he had told an ATF agent that he had signed the license in all of the transactions. The witness failed to recall making any such statement. Record, Transcript of Evidence, at 116–18.

Further, the Government requested permission to question Ralph Osborne about whether he had pled guilty to parts of the indictment and had in fact been convicted. Over the objection of the defendant, the court ruled that the Government was entitled to ask Ralph Osborne whether or not he pled guilty to part of the indictment for purposes of impeachment. Upon questioning, the witness admitted that he had pled

guilty to Counts Four and Six of the indictment. All this occurred in the presence of the jury, and at no time was a cautionary instruction concerning the use of this evidence requested by defense counsel or given by the court. Record, Transcript of Evidence, at 120–126.

At the conclusion of the testimony of Ralph Osborne, the Government called an ATF agent, M. Wayne Dowe, to impeach Ralph Osborne. When asked whether Ralph Osborne had previously stated that he signed the gun licenses, the agent testified that he had. Record, Transcript of Evidence, at 136–37.

In closing argument, the prosecutor used the impeachment of Ralph Osborne with devastating effect to do exactly what counsel had advised the court he would do, namely, "impeach him to show that he has nothing to lose here by lying to protect his brother." Record, Transcript of Evidence, at 122. In effect, the Government used the impeachment of Ralph Osborne as affirmative evidence against the defendant Robert Osborne. At one point during rebuttal, the Government stated:

> But the fact is, you oughtent [sic] to believe Ralph Osborne. Point one, *Ralph Osborne pled guilty to this indictment. His case has been disposed of. There is absolutely nothing to prevent him from lying to protect his brother.* In fact, you'd think it would be common for a brother to protect a brother and that's precisely what's going on here. He has nothing to lose by lying, nothin' at all. And also Ralph Osborne wasn't very truthful with you yesterday.

Record, Argument for the Government, at 14 (emphasis added). At a later point, the prosecutor emphasized Ralph Osborne's prior inconsistent statement as another example of his attempt to lie "to protect his brother":

> Now, also on the stand Ralph Osborne said on the stand the other day, 'Well, I don't recall who signed those three firearms licenses.' Also his mind got a little fogged. He called Wayne Dowe and said, 'Mr. Dowe, you remember talking to—

you and I talking to Ralph Osborne last Thursday night?' Yes, I do. We asked him about the firearms licenses. Yes. 'Did we ask him who signed those firearms licenses?' Yep. 'And who did he say signed all three firearms licenses?' Mr. Dowe testified Thursday night that Ralph Osborne said that he signed all three firearms licenses and also we got a handwriting expert in and all of a sudden Ralph Osborne comes in and his mind is fogged. Who are you going to believe? What are you going to believe? And think about that handwriting expert a minute. I asked you to take those samples and compare them for yourselves. Robert Osborne signed that firearms license for the Taylor Gun Shop and isn't it odd that Robert Osborne signed the very gun license resulting in the guns coming to his house? Is it just a mere allusion that the very same license that Robert Osborne signed resulted in four guns being shipped to his house where he knew they were there; he knew that Ralph Osborne received them.

\* \* \* \* \* \*

So, strip everything away here now and all of a sudden I don't believe that you can say that well, I can believe Ralph Osborne or I can't believe Ralph Osborne. Ralph Osborne's testimony is destroyed. It's inconsistant [sic]. He lied to you. You strip all this down and this is what you have, Ladies and Gentlemen.

*Id.* at 16–17.

Following closing argument, the court instructed the jury. The court gave general cautionary instructions regarding the testimony of witnesses. Record, Transcript of Evidence, at 185, 188, 197. However, as to any specific cautionary or curative instructions regarding the guilty plea or prior inconsistent statements of Ralph Osborne, none were requested by defense counsel and none were given by the court.

After the jury retired, defense counsel made a motion for a mistrial on the basis of the Government's improper use of the impeachment of Ralph Osborne. While the Government counsel urged that a party could permissibly impeach its own witness under Rule 607 of the Federal Rules of Evidence, the court expressed doubt as to how such evidence was used in the instant case.

MR. BONDURANT: To continue, Your Honor, Rule 607 says it may be attacked or impeached by any party including the party that called him and in the notes of the Advisory Committee, it says the Rule against impeaching one's own witness is abandoned. So, yeah, it is a common law rule under the Federal Rules of Procedure.

THE COURT: Well, the issue here involved is not quite that simple. The question is deliberately calling a witness that you know is not going to state what you want just for the purpose of impeaching him, so that you can get contradictory statements in as positive direct evidence against a person and that is what happened in this case. In other words, there was every kind of inference in the world drawn over Ralph Osborne's non-evidence, not positive evidence, but just simply put him on for the sole purpose of impeaching him in order to get up and argue that Ralph Osborne is a liar and therefore, that the other statements that he made aren't true. Now, there's no question but in an impeachment of a witness, is to go to a witness' credibility not to present positive evidence to the jury and infer that the opposite is true, so I see a question. At this time, I'm going to overrule the objection and the motion for mistrial.

Record, Transcript of Evidence, at 202–203. Upon deliberation, the jury found the defendant guilty of conspiracy to violate federal gun laws as alleged in Count One of the indictment.

In the grounds for a motion for directed verdict, the defendant contends, as follows: (1) that the evidence does not show that the defendant Robert Ray Osborne committed any overt acts to carry out a conspiracy; (2) that Count One of the indictment alleging conspiracy should have been dismissed because Robert Ray Osborne could not be

found guilty of conspiracy where his alleged co-conspirator had been dismissed from the conspiracy count pursuant to a plea bargain; and (3) that the Government failed to prove beyond a reasonable doubt that there was an agreement to commit a conspiracy. In support of his motion for a new trial, the defendant argues that the Government improperly called Ralph Osborne to the stand solely for the purposes of impeachment, thereafter improperly argued that Ralph Osborne lied to protect his brother, and finally inferred Robert Osborne's guilt from the untruthfulness of his brother.

### III.

With regard to the first ground for the motion for a directed verdict of acquittal, it is not necessary that every co-conspirator within a given scheme commit an overt act. Rather, it is only necessary that one of the co-conspirators carry out an overt act. Therefore, a conspiracy conviction only requires that one of the conspirators knowingly committed one of the overt acts charged in the indictment, and it is not necessary for a jury to find that the defendant committed one of the overt acts. *See United States v. Murzyn*, 631 F.2d 525 (7th Cir. 1980), *cert. denied*, 450 U.S. 923, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981); *United States v. Kelly*, 569 F.2d 928 (5th Cir.), *cert. denied*, 429 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978).

Furthermore, there is no merit to the contention that the dismissal of the conspiracy charges as to Ralph Osborne bars the conviction of Robert Ray Osborne. A dismissal is not equivalent to a judgment of acquittal. The conspiracy charge was dismissed as to Ralph Osborne as a result of a compromise rather than a finding that the evidence was insufficient to convict. Therefore, the plea agreement between the United States and Ralph Osborne does not affect the conviction of Robert Ray Osborne. *See United States v. Coppola*, 526 F.2d 764 (10th Cir. 1975); *United States v. Musgrave*, 483 F.2d 327 (5th Cir.), *cert. denied*, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973).

As to the third ground in his motion for a directed verdict, the defendant argues that the Government did not prove that Robert Osborne entered into any agreement with Ralph Osborne. Initially, it should be noted that it is not necessary that a formal agreement be proven, as such proof is almost always lacking because the mark of a successful conspiracy is secrecy. *See United States v. Hedman*, 630 F.2d 1184 (7th Cir. 1980), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981); *United States v. Warner*, 441 F.2d 821 (5th Cir.), *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971); *United States v. Varelli*, 407 F.2d 735 (7th Cir. 1969).

Since a conspiracy by its very nature is born and clothed in secrecy, the first element of the offense—agreement—is seldom susceptible of direct proof. Proof of the agreement or common purpose therefore must rest upon inferences drawn from relevant and competent circumstantial evidence—ordinarily the acts and conduct of the conspirators themselves. *United States v. Warner*, 441 F.2d at 830. Furthermore, no specific written or spoken words establishing the agreement need be proven to establish the conspiracy. *See United States v. Laughman*, 618 F.2d 1067 (4th Cir.), *cert. denied*, 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980); *United States v. Masiello*, 491 F.Supp. 1154 (D.S.C. 1980); *People v. Edwards*, 74 Ill.App.2d 225, 219 N.E.2d 382 (1966). Finally, it is not necessary that the Government prove that a defendant knows of the existence of criminal activities in order to convict him of a conspiracy. Knowledge can be inferred from circumstantial evidence in the case as a whole, and a conspiracy conviction will be sustained "even if the defendant's connection to the conspiracy is slight." *United States v. Sanchez-Murillo*, 608 F.2d 1314, 1318 (9th Cir. 1979).

In this case, the Government proved that Ralph Osborne used Robert Ray Osborne's firearms license to purchase guns from March 26, 1979 to May 3, 1979 in various states. The Government also proved that at the time the guns were

purchased Ralph Osborne was a convicted felon and the defendant, Robert Ray Osborne, knew that his brother was a convicted felon. While the evidence was conflicting as to whether Ralph Osborne was a resident of Virginia or Tennessee at the time of the purchase of the guns, there was evidence which was undisputed that Robert Ray Osborne admitted that he knew that his brother was a resident of Tennessee when he purchased the firearms. There was also unrefuted evidence that the defendant, Robert Ray Osborne, personally signed one of the firearms licenses used. The court is also of the opinion that this evidence is sufficient to support an inference that a conspiracy existed, since it is not necessary to show that the parties met and actually arranged a detailed plan, but rather, that there was a union of wills for an unlawful purpose. Thus, when Robert Osborne permitted his brother to have his gun license knowing that he was a convicted felon, it may be inferred that he did so with the knowledge and for the purposes of permitting his brother to illegally buy guns.

It is strongly argued by the defendant that the evidence is insufficient in this case unless certain admissions made by Ralph Osborne had shown that the defendant Robert Osborne knew that firearms were being purchased with the license. The evidence in this case was to the effect that Robert Osborne admitted that he knew that on one occasion a number of firearms bought by Ralph Osborne were delivered to Robert Osborne's residence at Route 3, Lebanon, Virginia, the firearms being bought from a dealer in Georgia. The evidence also shows that Robert Osborne stated, "I know Ralph has a copy or copies of my license. I told him he was going to get in trouble. He was going to get me in trouble." Record, Transcript of Evidence, at 88–89. Defendant contends that these statements do not show that he knew anything about Ralph Osborne's illegal activities until after the acts had already been committed. It is true that these statements could just as well be taken to mean that Robert Osborne knew about these purchases after the fact. However, there was another circumstantial piece of evidence found in a search of Robert Osborne's home which was introduced in a photo, Government's Exhibit # 20. This document was in the form of a statement from "Taylor's Guns, 1740 W. Mercer Drive, Griffin, Georgia." In light of this statement and Robert Osborne's admission that he knew about the guns from Georgia being mailed to his house, there was sufficient circumstantial evidence from which the jury could infer that Robert Osborne knew about the transaction at the time that it happened.

Despite Ralph Osborne's testimony to the contrary, the court is of the opinion that there was sufficient circumstantial evidence in this case from which the jury could have found that an agreement existed between Ralph Osborne and Robert Osborne to carry out illegal activities and that Ralph Osborne carried out these illegal acts by purchasing guns illegally. For these reasons, the defendant's motion for a directed verdict of acquittal is denied.

### IV.

■■ Under the Federal Rules of Evidence, the ability of a party to a legal proceeding to attack the credibility of a witness called by him can no longer be questioned:

> The credibility of a witness may be attacked by any party, including the party calling him.

Fed.R.Evid. 607. Accordingly, guilty plea evidence may properly be considered by the jury in evaluating the witness' credibility. See *United States v. Halbert*, 640 F.2d 1000 (9th Cir. 1981); *United States v. Whitehead*, 618 F.2d 523 (4th Cir. 1980); *United States v. King*, 505 F.2d 602 (5th Cir. 1974); *Isaac v. United States*, 431 F.2d 11 (9th Cir. 1970). However, the guilty plea of a co-defendant may not be offered by the Government as substantive evidence of the guilt of those on trial. *United States v. Halbert*, 640 F.2d at 1004; *Baker v. United States*, 393 F.2d 604, 614 (9th Cir.), *cert. denied*, 393 U.S. 836, 89 S.Ct. 110, 21 L.Ed.2d 106 (1968). Therefore, admissibility of the plea depends

upon the proposed use for which it is offered.

■ Notwithstanding the legitimate use of guilty plea evidence, the court has the responsibility to insure that the evidence is offered by the prosecutor and used by the jury only for a permissible purpose. Introduction of the plea becomes prejudicial error when, for example, the Government suggests that the jury use the plea for a prohibited purpose, *United States v. Miranda*, 593 F.2d 590 (5th Cir. 1979); *United States v. Little Boy*, 578 F.2d 211 (8th Cir. 1978), when the use of a plea involves "aggravated circumstances," *United States v. Harrell*, 436 F.2d 606 (5th Cir. 1970), or where the Government disproportionately emphasizes or repeats the evidence of the plea before the jury. *United States v. Halbert*, 640 F.2d at 1005.

■ Applying these principles, the court must address two issues: (A) did the Government offer and use the evidence of Ralph Osborne's guilty plea for a permissible purpose, and (B) did this court's failure to explain to the jury the purpose for which the evidence could be used constitute plain error.

### A.

Although the Government properly offered evidence of Ralph Osborne's guilty pleas for impeachment purposes, the court finds that the Government's use of the evidence during closing argument was improper. Defense counsel discussed the guilty plea in his closing argument, contending that there was no co-conspirator with Robert Osborne since Ralph Osborne was dismissed under Count 1 of the indictment pursuant to the plea agreement. Record, Argument for the Defendant, at 12–13, 19–20. In response, the prosecutor stated:

Now, the indictment itself, he [defense counsel] was having a hard time with the pages in the indictment. Well, first let me say this about the indictment, he's saying where is the co-conspirator. Ralph has been acquitted. That is not true. You remember Ralph had taken the stand and he said, 'I pled to counts four and six,' I think. I asked him what happened to the other counts. He said, 'Well, I didn't plead to those.' Why? Plea bargain. Now, a plea bargain is used in the court system, whether you like it or not, and in a plea bargain, you give them somethin' and you get somethin' back. *Just because you dismiss one count doesn't mean you don't think that they're guilty of that count.* You just work out a deal and any deal you work out, you're not going to get everything you want. You go out and buy a car and you say I'll give you $5,000 for it and the dealer says $6,000 and you end up paying $5,500, you wanted to pay $5,000, not $5,500. This same system works in the court. You deal with these people and just because the United States Attorney dismissed count one in order to get Ralph to plead to counts four and six, *that does not mean we didn't think he was guilty of count one.* We just cut a deal.

Record, Argument for the Government, at 9–10 (emphasis supplied).

By the terms of this argument, the Government did not limit the use of the plea as evidence of credibility or as a necessary response to references made by the defense. Rather, the emphasized portions of the transcript created the negative inference that the prosecution believed that Ralph Osborne was guilty of the conspiracy alleged in Count 1 of the indictment. Although this was not used as positive evidence against the defendant, the Government's statements may very well have led the jury to consider the credibility of Ralph Osborne on the basis of his supposed guilt of conspiracy with Robert Osborne, a guilt which has not been proven.

The prejudice inherent in the argument arises from the impression that proof of the guilty plea of Ralph Osborne somehow proved the defendant's guilt. A jury could reasonably infer that if Ralph Osborne was guilty of conspiracy with the defendant, how could the defendant be other than guilty of conspiring with Ralph Osborne? Jurors are aware that it takes two to tango. *United States v. Gullo*, 502 F.2d 759, 761 (3d

Cir. 1974); *United States v. Harrell*, 436 F.2d 606, 614 (5th Cir. 1970), *cert. denied*, 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1971). In the absence of a cautionary instruction, Robert Osborne may very well have been placed into a context of guilt by association.

Additional comments by the prosecutor lead the court to this conclusion. At a later point in the rebuttal argument, he stated:

> But the fact is you oughtent [sic] to believe Ralph Osborne. Point one, *Ralph Osborne pled guilty to this indictment.* His case has been disposed of. *There is absolutely nothing to prevent him from lying to protect his brother.*

Record, Argument for the Government, at 14. (Emphasis supplied). This argument is improper in two ways. First, the Government reiterated the fact that the witness entered a plea agreement, without attempting to specify that the plea encompassed only the substantive Counts 4 and 6 of the indictment. More harmful, however, the Government attempted to infer the guilt of the defendant, Robert Osborne, from the alleged untruthfulness of the witness, Ralph Osborne. In effect, the Government argued that Ralph Osborne was lying, and doing so because the defendant, his brother, was guilty. At a later point, the Government re-emphasized its conclusion that Ralph Osborne was lying by directing the jury's attention to the Government's impeachment of Ralph Osborne by use of prior inconsistent statements. Record, Argument of the Government, at 14. Reference to such impeachment testimony merely bolsters the impermissible inference which the Government had previously invited the jury to adopt. Such a substantive use of the guilty plea evidence, reinforced by the Government's multiple references to the witness' credibility, is impermissible. *United States v. Miranda*, 593 F.2d 590, 594–96 (5th Cir. 1979); *United States v. Little Boy*, 578 F.2d at 212.

### B.

Although the prosecutor's use of Ralph Osborne's testimony relating to his guilty plea was prejudicial, the defense counsel did not object to the prosecution's argument, or request a cautionary instruction. In the absence of a timely objection to the court's charge, the court may not grant a new trial unless the failure to *sua sponte* instruct the jury is "plain error." *United States v. Curry*, 512 F.2d 1299, 1303 (4th Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50 (1975); Fed.R.Crim.P. 52(b). Therefore, the court must determine whether failure to caution the jury was error so patent as to have seriously jeopardized the substantial rights of the accused. *United States v. King*, 505 F.2d at 605; Fed.R.Crim.P. 52(b).

Where there are "aggravating circumstances" which the trial court should have been aware of, plain error in the failure to give an unrequested instruction may arise. *United States v. Harrell*, 436 F.2d at 617. *See also United States v. Halbert*, 640 F.2d at 1005; *United States v. Delucca*, 630 F.2d 294, 299 (5th Cir. 1980). With this in mind the court must carefully examine all the facts and circumstances of the case in their proper context in order to ascertain whether plain error exists in this case. *United States v. Delucca*, 630 F.2d at 299; *United States v. King*, 505 F.2d at 608.

> The presence or absence of an instruction is an important factor, but it is also essential to consider other factors, such as whether there was a proper purpose in introducing the fact of the guilty plea, whether the plea was improperly emphasized or used as substantive evidence of guilt, whether the introduction of the plea was invited by defense counsel, whether an objection was entered or an instruction requested, whether the defendant's failure to object to the testimony could have been the result of tactical considerations, and whether, in light of all the evidence, the failure to give an instruction was harmful beyond a reasonable doubt.

*King*, 505 F.2d at 608. To the extent they are relevant, these factors provide guidance in the determination of this case.

As previously discussed, the Government used this evidence to place Robert Osborne

into the context of guilt by association. The prosecution first expressed an opinion as to Ralph Osborne's guilt or innocence of the conspiracy charge dismissed against him. The Government argued further that Ralph Osborne's guilty plea supplied a sufficient motive for him "to protect his brother" by lying.[2] The court feels that the combined import of these statements suggested to the jury that they should find Robert Osborne guilty on the basis of Ralph Osborne's guilty plea. It is doubtful that any curative instruction, requested or otherwise, would have erased the prejudice of these statements from the minds of the jurors. *See United States v. Miranda*, 593 F.2d at 595–96; *United States v. Fleetwood*, 528 F.2d 528, 536 (5th Cir. 1976); *United States v. Baete*, 414 F.2d 782, 783–84 (5th Cir. 1969). The court resolves any doubts in favor of the accused and does not find the absence of an objection to be fatal. *United States v. Miranda*, 593 F.2d at 596; *United States v. Garber*, 471 F.2d 212, 217 (5th Cir. 1972). Further, the *sua sponte* general cautionary instruction given by the court in this case in its final charge to the jury[3] was insufficient to ameliorate the prejudicial impact of the prosecutor's closing argument: it "was at best too little and too late under the circumstances of this case." *United States v. Garber*, 471 F.2d at 217.

Although the prosecutor impermissibly used the guilty plea evidence, such conduct in the absence of a cautionary instruction does not constitute plain error if the defense counsel invited such comment. *United States v. Delucca*, 630 F.2d at 298–300; *United States v. King*, 505 F.2d at 608–09.

Admittedly, the defense counsel argued that since Ralph Osborne was dismissed as to the conspiracy count, Robert Osborne could not be convicted of conspiring with himself. Record, Argument for the Defendant, at 12–13, 19–20. The defense counsel, in effect, invited the prosecutor's argument that Ralph Osborne's dismissal pursuant to the guilty plea did not mean that the Government did not think he was not guilty of conspiracy. *United States v. Miranda*, 593 F.2d at 595 n. 5. However, the defendant did not invite the Government's further argument that Robert Osborne was guilty because his brother was a convicted criminal and a liar. The Government took liberties beyond its invitation, and made an incursion into improper and prejudicial inferences. The inferences made by the Government were unnecessary.

Additionally, the court rejects any suggestion that defense counsel's failure to object was the result of tactical considerations. Although a finding of such tactics may preclude a determination of plain error, *United States v. King*, 420 F.2d 946, 947 (4th Cir.), *cert. denied*, 397 U.S. 1017, 90 S.Ct. 1253, 25 L.Ed.2d 432 (1970), no legitimate tactical advantage was to be gained by allowing the prosecutor twice to urge the jury to consider Ralph Osborne's prior conviction as evidence of Robert Osborne's guilt. Further, the existence of the other factors discussed preclude any finding that mere tactical advantage alone should preclude a plain error determination. *See United States v. King*, 505 F.2d 602, 609 (5th Cir. 1974); *United States v. Rothman*, 463 F.2d 488, 490 (2d Cir. 1972) (indicating that facts in addition to tactical advantage

**2.** Such comments indicate a purpose quite different than that which normally prompts impeachment. Inasmuch as the only purpose of impeachment is to neutralize damaging testimony given, it must still yet be carefully restricted to that purpose. *United States v. Coppola*, 479 F.2d 1153, 1158 (10th Cir. 1973). Here, the prosecution not only stated that the witness' prior conviction established he was lying, but also inferred that Robert Osborne, the defendant was guilty.

**3.** The strongest instruction by the court stated:

[A]ny admission or incriminatory statement made or act done outside of court by one person may not be considered as evidence against any person who was not present and did not hear the statement made or see the act done. Therefore, statements of any conspirator that are not in furtherance of the conspiracy or made before its existence or after its determination may be considered as evidence only against the person who made it.

Record, Transcript of Evidence, at 197. Other general instructions were given by the court at Record, Transcript of Evidence, at 185, 188.

are necessary to preclude plain error finding). Having carefully examined the case law and the facts and circumstances in this case, the court finds that the Fourth Circuit's holding in *United States v. King*, 420 F.2d 946, is confined to the facts of that case.

Finally, the court concludes that the court's failure to give *sua sponte* a cautionary instruction was not harmless error. Such a result can only arise where evidence of the defendant's guilt is exceptionally strong and the error appears to have been harmless beyond a reasonable doubt. Although the evidence was sufficient to support the verdict, the Government's case was by no means overwhelming. The court cannot say with certainty that the prosecution's undue emphasis upon the guilty plea evidence did not substantially affect, or perhaps control the jury's determination of the defendant's guilt. *See United States v. Wiesle*, 542 F.2d 61, 62–63 (8th Cir. 1976); *United States v. Fleetwood*, 528 F.2d at 535; *United States v. Harrell*, 436 F.2d at 617; *United States v. Harris*, 409 F.2d 77, 82 (4th Cir.), *cert. denied*, 396 U.S. 965, 90 S.Ct. 443, 24 L.Ed.2d 430 (1969). Therefore, in light of the Government's argument failure of the court to *sua sponte* give a specific curative instruction regarding the guilty pleas of Ralph Osborne was not harmless beyond a reasonable doubt, and constituted plain error. *United States v. Miranda*, 593 F.2d at 596; *United States v. Little Boy*, 578 F.2d at 212; *United States v. Fleetwood*, 528 F.2d at 536; *United States v. Davis*, 487 F.2d 112, 120 (5th Cir. 1973), *cert. denied*, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974).

## CONCLUSION

In light of the foregoing discussion, the court concludes that the evidence was sufficient to support the jury's finding of guilt against the defendant for conspiracy to violate federal gun laws. Accordingly, the defendant's motion for a directed verdict of acquittal is denied.

However, the court further concludes that plain error was committed when the court failed to *sua sponte* give a specific cautionary instruction regarding the limited use of the evidence of a guilty plea of a co-conspirator witness. Accordingly, the jury's verdict of guilty is set aside, and the defendant, Robert R. Osborne, is awarded a new trial.

Finally, counsel for both sides strenuously argue the applicability of the pre-Federal Rules of Evidence case of *United States v. Morlang*, 531 F.2d 183 (4th Cir. 1975). In *Morlang*, the Fourth Circuit Court of Appeals held that a party may not call a witness solely for the purpose of impeaching him in an attempt to get before the jury substantive evidence not otherwise admissible. However, the court expressly refuses to make a ruling on the basis of *Morlang* since the court's disposition of this case makes such a ruling unnecessary.